Edward JAMISON, Plaintiff,

v.

OLGA COAL COMPANY, a corporation,
et al., Defendants.

Civ. A. No. 1255.

United States District Court,
S. D. West Virginia,
Bluefield Division.

Dec. 14, 1971.

John Troelstrup, Weaver & Troelstrup, Charleston, W. Va., for plaintiff.

Charles A. Tutwiler, Crockett, Tutwiler & Crockett, Welch, W. Va., for defendant Olga Coal Co.

M. E. Boiarsky and R. L. Theibert, Charleston, W. Va., for Local No. 6026.

Edward L. Carey and Charles L. Widman, Washington, D. C., M. E. Boiarsky and R. L. Theibert, Charleston, W. Va., for District No. 29 and United Mine Workers of America.

CHRISTIE, District Judge:

Plaintiff, Edward Jamison, brings this action on behalf of himself and the class he proposes to represent alleging racially discriminatory practices on the part of both the defendant employer and the defendant unions. The rights of plaintiff and the class he represents are alleged to arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Section 1 et seq. of the Labor Management Relations Act, 29 U.S.C. § 151 et seq. Jurisdiction is based upon Section 706(f) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f), 28 U.S.C. § 1343(4), and 28 U.S.C. §§ 2201 and 2202. The complaint seeks declaratory relief, injunctive relief and damages.

## I. PRELIMINARY PROCEEDINGS

On August 5, 1966, Edward Jamison, an employee of defendant Olga Coal Company (Olga) and a member of Local No. 6026, District No. 29, United Mine Workers of America (Local 6026), a labor organization with which Olga has a collective bargaining agreement, filed a charge against Olga and Local 6026 with the Equal Employment Opportunity Commission (EEOC), pursuant to the provisions of 42 U.S.C. § 2000e–5(d). In his charge before the EEOC, Jamison alleged that Olga had failed to promote him from brakeman to motorman because of his race and that Olga denied Negroes promotions to better jobs. He also charged that Local 6026, though aware of Olga's discriminatory practices, failed to protest such practices and did nothing to secure promotions and other job opportunities denied to Negroes.[1] On the same date, August 5, 1966, Lee Heard filed a charge with the EEOC against Olga alleging that Olga refused to hire him because of his race; also asserting that Olga engaged in a pattern or practice of denying employment to Negroes. On February 15, 1967, Arthur Carlton filed a charge with the EEOC alleging that Olga, his employer, had denied him assignment as a maintenance helper because of his race; also alleging that Olga maintained ra-

[1]. Section 703(a) of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2(a), provides that it shall be an unlawful employment practice for an employer

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

Sub-section (c) of Section 2000e–2 provides that it shall be an unlawful employment practice for a labor organization

"(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

"(2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

"(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section."

cially restricted job categories and denied Negroes promotions to better jobs.

The EEOC assumed jurisdiction of the charges made by the three parties and caused notice thereof to be served on Olga and Local 6026. As a result of its investigation, by a decision dated September 5, 1969, the EEOC found that, while the specific charge of Edward Jamison with respect to the failure to promote him from brakeman to motorman was not within its jurisdiction since it occurred more than 90 days before the charge was filed with it, reasonable cause did exist to believe that Olga and Local 6026 were in violation of Title VII of the Civil Rights Act of 1964 with regard to the remaining charges made by Heard, Carlton and Jamison. By notice dated September 25, 1970, received by plaintiff Edward Jamison "on or about" September 28, 1970, the EEOC notified Jamison of his right to commence a civil action in the District Court within 30 days. Thereafter, on October 28, 1970, Jamison filed the instant action. The case is presently before the court pursuant to various motions made by the defendants seeking dismissal of the complaint. Numerous grounds are asserted by defendants for dismissal, and they will be discussed in the order in which they were presented in defendants' motions.

## II. THE 1964 CIVIL RIGHTS ACT

*Subject-Matter Jurisdiction in District Court*

Defendants first allege that this court lacks subject-matter jurisdiction over plaintiff's claim, asserting that the discrimination complained of occurred prior to July 2, 1965, the effective date of the 1964 Civil Rights Act. Defendants also assert that the discriminatory acts complained of occurred more than 90 days before plaintiff filed his charge with the EEOC.

■ Sub-section (d) of Section 2000e–5 of the Civil Rights Act provides that a charge of unlawful employment practices under the Act shall be filed within 90 days after the alleged unlawful employment practice has occurred. The courts which have been called upon to decide the question have held, almost unanimously, that the requirement of filing the charge within 90 days of the alleged unlawful practice is a jurisdictional prerequisite to a subsequent civil suit under Title VII, Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967), cert. den. 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166; Younger v. Glamorgan Pipe and Foundry Company, 310 F.Supp. 195 (W.D.Pa. 1969). At the same time, however, the courts have recognized that unlawful employment practices under the Act may involve a pattern of conduct extending over a period of time, a "continuing" violation rather than a single incident, and in such cases the 90-day requirement is satisfied if the charge is filed with the EEOC while such conduct or pattern of conduct continues or within 90 days after it ceases. Sciaraffa v. Oxford Paper Company, 310 F.Supp. 891 (D.C.Maine 1970); Cox v. United States Gypsum Co., 409 F.2d 289 (7th Cir. 1969).

■ In asserting that the discriminatory conduct complained of occurred prior to the effective date of the Act and more than 90 days before plaintiff filed his charge with the EEOC, defendants completely ignore the fact that plaintiff Jamison's charge before the EEOC involved two separate areas of discrimination, one general and one specific. While it is true that the specific charge of discrimination with respect to the promotion of Jamison to the position of motorman apparently relates to conduct on the part of the defendants prior to the effective date of the Civil Rights Act of 1964, and to an incident occurring more than 90 days before the filing of the charge with the EEOC, nevertheless, the general charge of a denial of promotions to Negroes to better jobs and the failure on the part of the defendant unions to seek redress of such discrimination is not confined to the same time period as was the specific

charge. Indeed, the complaint in this action and the charge before the EEOC both allege a pattern of conduct apparently continuing to the time of filing the charge with EEOC and beyond, which would obviously meet the requirement that the discrimination complained of must occur subsequent to the effective date of the Civil Rights Act of 1964 and that the complaint must be filed with the EEOC within 90 days of the alleged unlawful practice.

The charge made by plaintiff Jamison before the EEOC alleging that Olga denied Negroes promotions to better jobs and that Local 6026, although aware of such discriminatory practices, failed to take any action to alleviate such practices, constitutes a charge of "continuing" discrimination and was recognized as such by the EEOC in its decision.[2] The record before this court, insofar as it discloses the nature and extent of the alleged unlawful employment practices, indicates that these practices continued up to the time of filing the charge with EEOC. Under such circumstances, defendants' motions to dismiss for failure to satisfy the 90-day requirement, therefore, must be denied. The same reasoning requires the Court to deny defendants' motions to dismiss based upon the allegation that the discrimination charged in plaintiff's complaint occurred prior to the effective date of the Civil Rights Act of 1964.

*Requirement that Suit be Filed in District Court Within 30 Days*

■ Sub-section (e) of Section 2000e–5 of the Civil Rights Act of 1964 provides that in the event the EEOC has been unable to obtain voluntary compliance with the requirements of the Act, it shall so notify the person aggrieved "and a civil action may, within thirty days thereafter, be brought against the respondent named in the

charge . . . by the person claiming to be aggrieved . . .." Like the 90-day requirement with respect to filing charges with the EEOC, 42 U.S.C. § 2000e–5(d), the 30-day requirement for instituting suit in the District Court has been held to be a jurisdictional requirement, and failure to bring suit within the stipulated period will bar relief under Title VII, Goodman v. City Products Corporation, Ben Franklin Division, 425 F.2d 702 (6th Cir. 1970). This 30-day limitation period, however, does not begin to run until the notice from EEOC of its failure to achieve voluntary compliance has been *received* by the aggrieved person, Miller v. International Paper Company, 408 F.2d 283 (5th Cir. 1969).

■ In the instant case, plaintiff has alleged that "on or about September 28, 1970, plaintiff was advised that defendants' compliance with Title VII had not been accomplished within the period allowed to the Commission by Title VII and that he was entitled to institute a civil action in the appropriate Federal District Court within thirty (30) days of receipt of said letter." While it is true, as defendants contend, that it is not possible to determine from this language, with any degree of certainty, whether or not the 30-day requirement of Section 2000e–5(e) was met by plaintiff, nevertheless, the difficulty arises not from plaintiff's failure to assert in his pleading that the 30-day requirement was met, but from his failure to allege such fact with the required degree of precision. The Court, however, is not inclined to treat such failure as a ground for dismissal. Instead, since no responsive pleadings have been filed, the Court will merely point out that, under Rule 15(a), the plaintiff may amend his complaint (if the facts so justify) in such a manner as to satisfy the requirements of sub-section (e). If plaintiff

---

2. In the caption to its opinion decision, the EEOC noted not only the parties plaintiff and defendant, but also the date of the alleged violations, the date of filing of the charges, and the date of service of the charges. With respect to the date of the alleged violations, the EEOC indicated that Jamison filed charges of unlawful practices relating to violations of "April 4, 1964, and continuing."

fails to make such an amendment within thirty (30) days from the date hereof, the defendants may then renew their motion for dismissal.

*Failure to Make United Mine Workers of America and District 29 Parties before the EEOC.*

■ Plaintiff, in his petition before the EEOC, charged only Local 6026 and Olga with discriminatory employment practices in violation of Title VII. Neither District 29 nor the United Mine Workers of America (UMW) were named as parties in that proceeding. District 29 and UMW assert that this failure to make them parties before the EEOC entitles them to dismissal of the Title VII claim against them.

Section 706(e) of the Act, 42 U.S.C. § 2000e–5(e), sets forth the conditions under which the party before the EEOC may institute an action in the Federal District Court in the following language:

> "If within thirty days after a charge is filed with the Commission . . . the Commission has been unable to obtain voluntary compliance with the subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge. . . ."

On the basis of this provision, the courts have held that the party to an EEOC proceeding may institute suit in the District Court only after the EEOC has been given an opportunity to investigate and attempt to conciliate disputes arising under Title VII, Johnson v. Seaboard Air Line Railroad and Walker v. Pilot Freight Carriers, 405 F.2d 645 (4th Cir. 1968), cert. den. 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969). Relying upon this same provision, the courts have held that the suit in the District Court, subsequent to such proceedings, may be brought only against the "respondent named in the charge" filed with the EEOC, Mickel v. South Carolina State Employment Service, 377 F.2d 239, 241 (4th Cir. 1967); Moody v. Albemarle Paper Co., 271 F.Supp. 27, 29 (E.D.N.C.1967).

■ Plaintiff would attempt to avoid this requirement of the statute by alleging that a charge was filed with the EEOC naming Local 6026 and that, since Local 6026 is allegedly only an agent of District 29 and UMW, this charge against such agent was sufficient to charge District 29 and UMW. The Court does not find this reasoning persuasive. If a party charging discrimination on the part of a local union before the EEOC is of the opinion that such local is an agent of, or controlled by, a parent union body, then there is every reason for that party to charge the parent organization before the EEOC at the same time that charges are made against the local. A primary object of the EEOC is to attempt conciliation between parties and resolve disputes by the voluntary acts of those parties. If the so called "principal" or governing body is not charged before the EEOC, then an important aspect of the Title VII procedure is frustrated. If, as plaintiff alleges, Local 6026 is a mere instrumentality or agent of District 29 and UMW, then any efforts by the EEOC to resolve the dispute between plaintiff and the class he represents and Local 6026 would be futile, since the parties with the apparent power to alleviate the grievances or to make changes deemed necessary by the EEOC would not be brought before that body by the charging party.

The policy of Congress, in enacting that part of Title VII in which the administrative machinery for processing claims of discrimination was created, obviously was to permit an attempt at a voluntary settlement of disputes under the guidance of the EEOC prior to "the extreme measure of bringing a civil action in the congested federal courts." Mickel v. South Carolina State Employment Service, 377 F.2d at p. 241. Under such circumstances, this Court does not feel compelled to construe the plain words of 2000e–5(e) providing that a civ-

il action may be maintained "against the respondent named in the charge" to mean not only the respondent named but also anyone who could arguably be considered the principal of, or in control of, such respondent. In taking this position, the Court finds support in the opinions of other courts which have been called upon to decide this question. Thus, in Butler v. Local No. 4 and Local No. 269 Laborers' International Union of North America, 308 F.Supp. 528, 530 (N.D.Illinois, 1969), the Court noted that it found "language in some of these cases indicating that the rule need not be strictly applied where there exists between the defendants, one of whom was not charged before the Commission, an agency relationship by which a common enterprise of discrimination is being carried out." Notwithstanding such decisions, however, the Court, finding the language of the statute clear and unequivocal, held that a party must be a respondent before the EEOC before he may be sued in District Court under Title VII. See also McDonald v. American Federation of Musicians of the United States of America and Canada, 308 F. Supp. 664, 669 (N.D.Illinois, 1970). Thus, based upon our interpretation of the jurisdictional provisions of Title VII, we will order dismissal of the Title VII claims of plaintiff and the members of his class insofar as they relate to District 29 and to the UMW.

As noted by plaintiff in his brief, it may be possible for him to file a complaint with the EEOC against District 29 and the UMW in a case where, as here, a "continuing violation" charge is made, and have that complaint processed to the point where this court could acquire jurisdiction over District 29 and the UMW with respect to the Title VII claims. If and when plaintiff takes such action, this Court can then decide the question of joinder of those parties pursuant to the provisions of Rule 19 of the Federal Rules of Civil Procedure. See Norman v. Missouri Pacific Railroad, 414 F.2d 73 (8th Cir. 1969).

## III. STATUTE OF LIMITATIONS WITH RESPECT TO CLAIM OF UNFAIR REPRESENTATION AGAINST DEFENDANT UNIONS

A union, as the exclusive representative of the members of a bargaining unit, has a duty of fair representation to all the members of that unit. This duty, established in a number of early Supreme Court cases dealing with racial discrimination in railroad unions, Steele v. Louisville & National Railroad Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), is a "federal obligation which has been judicially fashioned from national labor statutes." Abrams v. Carrier Corporation, 434 F.2d 1234, 1251 (2d Cir. 1970). Under the doctrine of fair representation, the union has a statutory duty "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967).

In his complaint, plaintiff alleges, among other things, that defendant unions, although aware of racially discriminatory conduct on the part of Olga, have failed to act on complaints of Negro union members or to take any action to redress alleged discrimination. Plaintiff also alleges that, pursuant to the terms of the collective bargaining agreement and local supplemental agreements, Olga and the defendant unions have established promotional and seniority systems with the intent and for the purpose of continuing and preserving a prior practice and custom of limiting employment and promotional opportunities to Negro employees of Olga. Defendants, however, assert in their motion and the supporting brief that "since the instant action was instituted by issuance of process on October 28, 1970, and the matter on which plaintiff Jamison premised his charge of discriminatory conduct before the EEOC and herein under count two occurred . . . in 1964, it is obvious that his

right or rights of action, if any, are barred under West Virginia's two year statute of limitations." This assertion ignores the fact that the claim of unfair representation in violation of the provisions of 29 U.S.C. § 151 et seq. (Labor-Management Relations Act), if established, is independent of the charges made before the EEOC and not confined to the issues raised before that administrative tribunal. While there is substantial authority to support the proposition that plaintiffs, in Title VII actions in the District Court, are limited to those issues which grow out of, or are reasonably related to, the investigation of the EEOC, Sciaraffa v. Oxford Paper Company, 310 F.Supp. 891 (S.D.Maine, 1970); Logan v. General Fireproofing Co., 309 F.Supp. 1096 (W.D.N.C.1969), nevertheless, jurisdiction of the unfair representation claims is based upon the statutory obligation arising out of the exclusive powers granted to the representative of a bargaining unit by the Labor-Managment Relations Act, Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Though it may be argued that an incident allegedly involving racial discrimination, which is barred by the limitation period contained in Title VII, is also barred in a Title VII action in this court, that argument has no merit when applied to a claim based upon an unfair representation charge. In this particular case, the plaintiff has not only *not* asserted in his complaint the alleged discriminatory failure to promote him to motorman in 1964, but, to the contrary, has asserted a pattern or continuing course of conduct on the part of the defendant union which, according to him, has involved numerous instances of unfair or discriminatory representation of the Negro employees of Olga. Thus, in view of the fact that plaintiff alleges continuing discriminatory conduct on the part of the defendant unions, which conduct, depending upon the nature of the evidence ultimately presented in this case, may very well involve instances of unfair representation as recent as the time of the filing of the complaint, this Court is not disposed to grant defendants' motion to dismiss on the basis of the statute of limitation claim. A more appropriate time for such a motion would be after plaintiff has presented his evidence with respect to the claim of unfair representation. At that time the Court would have sufficient evidence before it upon which to rule on a motion to dismiss for failure to bring the action within the appropriate period of limitation.

Having ruled that the record before the Court at this stage of the proceedings does not permit a decision with respect to the question of whether or not plaintiff's claim of unfair representation is barred by a statute of limitations, the Court, nevertheless, is of the opinion that defendants' motion does present an appropriate opportunity to determine which statute of limitation is applicable to the unfair representation claim.

█ Since the Labor-Management Relations Act provides no specific period of limitation for the institution of unfair representation actions, the question of the limitation period to be applied must be determined by reference to the appropriate state limitations on similar suits. Falsetti v. Local Union No. 2026, United Mine Workers of America, 249 F.Supp. 970 (W.D.Pa.1965), aff'd, 3 Cir., 355 F.2d 658; Gray v. International Association of Heat and Frost Insulators and Asbestos Workers, Local No. 51, 416 F.2d 313 (6th Cir. 1969). Defendants contend that the West Virginia limitation period applicable to plaintiff's unfair representation claim is the two year period set forth in W.Va. Code, Chapter 55, Article 2, Section 12, which provides that:

"Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the

right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative."

Plaintiff, on the other hand, cites International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Hoosier Cardinal Corporation, 383 U.S. 696, 705, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966), a decision in which the Supreme Court recognized that a claim under Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a), at least in the context of that case, "closely resembles an action for breach of contract cognizable at common law." Based upon this authority, plaintiff contends that the appropriate limitation period under West Virginia law is the five year period for actions based upon contract, whether expressed or implied, W.Va. Code, Chapter 55, Article 2, Section 6.

 The Court has carefully considered the arguments and has examined the cases proffered by both parties, as well as the general statutes in the State of West Virginia, with regard to the statutes of limitation, and finds, perhaps not surprisingly, that neither of the limitation statutes advocated by the parties nor any other statute which the Court could locate appears to contemplate specifically the type of action asserted in this case. As pointed out in Waters v. Wisconsin Steel Works of International Harvester Company, 427 F.2d 476, 490 (7th Cir. 1970), the origin of the duty of fair representation is statutory, as opposed to contractual, and federal jurisdiction is based not on Section 301(a) but on federal question or civil rights jurisdictional provisions, Brady v. Trans World Air Lines, Inc., 401 F.2d 87 (3rd Cir. 1968), cert. den., 393 U.S. 1048, 89 S.Ct. 680, 681, 684, 21 L.Ed.2d 691 (1969); Williams v. Pacific Maritime

Ass'n, 384 F.2d 935 . (9th Cir. 1967). Defendants' contention, on the other hand, that the cause of action is primarily one for personal injuries or property damage and, therefore, should be based upon the two-year limitation period provided in W.Va. Code 55–2–12, is not in accord with the opinion of the Court in Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191 (4th Cir. 1963), wherein the Court noted that,

"His [plaintiff] federal cause of action, as we have seen, is based on an alleged breach of the defendant's statutory obligation to represent him fairly. Although the Supreme Court has not explicitly characterized this obligation by the very term 'fiduciary relationship,' its treatment of the subject is tantamount thereto. It has in fact said that '[b]argaining agents who enjoy the advantages of the Railway Labor Act's provisions *must execute their trust* without lawless invasions of the rights of other workers.' (Emphasis added.) While it is not always appropriate to transplant common law concepts to the field of labor relations, it is plain that in the Supreme Court's view the federal statutory duty of fair representation is not unlike a common law fiduciary obligation."

Faced with this dilemma, the Court must apply the state statute of limitation most appropriate for the federal cause of action asserted and, in such circumstances, holds that the two-year limitation provision set forth in W.Va. Code 55–2–12, though not clearly applicable to the federal claim here asserted, is the most nearly appropriate limitation period available under West Virginia law.[3] Accordingly, with respect to the unfair representation claim, plaintiff and the members of his class will be limited in recovering damages to the two-year period set forth in the state code.

3. The limitation period of two years would seem to be more appropriate than the five-year period provided for the enforcement of contracts. That this is so is indicated by the six-month period of limitations applicable to unfair labor practices under the National Labor Relations Act, 29 U.S.C. § 160(b).

## IV. CLAIM FOR RELIEF UNDER SECTION 1 OF THE CIVIL RIGHTS ACT OF 1866

 Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, provides that,

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Plaintiff asserts that the racially discriminatory practices of Olga and the defendant unions alleged in the complaint establish a violation, not only of the provisions of Title VII of the Civil Rights Act of 1964, but also of Section 1 of the Civil Rights Act of 1866. Defendant unions, on the other hand, assert that the discrimination prohibited in Section 1981 relates to contractual rights and they cite a Supreme Court case, J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), for the proposition that " 'no one has a job by reason of' the collective bargaining agreement between the employer and the union and 'no obligation to any individual ordinarily comes in to existence from it alone.' " From this stance, the defendant unions reason that their alleged discriminatory activities could not be in violation of the provision of Section 1981 which declares that "all persons . . . shall have the same right . . . to make and enforce contracts . . .." The defendant unions cite, and the Court can find, little authority to support this proposition.

The Supreme Court, in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), held that Section 2 of the Civil Rights Act of 1866, 42 U.S.C. Section 1982, prohibited all racial discrimination, whether public or private, in the sale or rental of property. The Court based its holding in that case in part upon a finding that Section 2 of the Civil Rights Act of 1866 was enacted pursuant to the provisions of the Thirteenth Amendment to the Constitution rather than the Fourteenth Amendment, and thus was applicable to private discrimination. The Courts, in decisions subsequent to the Jones case, have adopted the reasoning of that case in interpreting the provisions of Section 1981 of the same Act. In Young v. International Telephone & Telegraph Co., 438 F.2d 757 (1971), the Third Circuit held that Section 1981, like Section 1982, was derived from the Civil Rights Act of 1866 and, therefore, was applicable to private as well as public discrimination, since the authority of Congress in enacting Section 1 of the Act of 1866 was based upon the Thirteenth Amendment to the United States Constitution. See also Waters v. Wisconsin Steel Works of International Harvester Company, 427 F.2d 476 (7th Cir. 1970), cert. den. 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151; Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970); Boudreaux v. Baton Rouge Marine Contracting Company, 437 F.2d 1011 (5th Cir. 1971). As a logical consequence of this reasoning, the courts have also held that Section 1981 applies to private discrimination in employment either on the part of the employer or on the part of the union. With reference to defendants' contention that Section 1981 has no application in this case because there is no contractual relationship between plaintiff and defendant unions, the following statement from the opinion of the Court in Young, supra, 438 F.2d at p. 760, would seem to preclude that argument:

> "Defendants also contend that assuming the applicability of § 1981 to certain private acts of discrimination, a fair reading of the statute precludes the construction that it was intended to apply to the employment situation. We cannot agree. In the context of the Reconstruction it would be hard to imagine to what contract right the

Congress was more likely to have been referring. Certainly the recently emancipated slaves had little or nothing other than their personal services about which to contract. If such contracts were not included, what was? Certainly the situation of former slaves with respect to their labor was a matter of grave concern in the Congress when the 1866 Act was passed. We therefore reject the strained reading of § 1981 suggested by defendants."

As pointed out by the Seventh Circuit in *Waters*, supra, 427 F.2d at p. 483, "racial discrimination in employment by unions as well as by employers is barred by section 1981. The relationship between an employee and a union is essentially one of contract. Accordingly, in the performance of its functions as agent for the employees a union cannot discriminate against some of its members on the basis of race." As further pointed out by the Fourth Circuit in *Scott v. Young*, 421 F.2d 143 (1970), cert. den. 398 U.S. 929, 90 S.Ct. 1820, 26 L.Ed.2d 91, Section 1981 (as was the case in connection with Section 1982 in the *Jones* case) "must be construed in . . . broad fashion." Thus, by construing the provision of Section 1981 liberally, as directed by the Court in *Scott*, and by giving consideration to the interpretation given that section by other Courts, this Court must hold that plaintiff has stated a cause of action against defendants under the provisions of Section 1981.

## V. FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED

Defendants next contend that plaintiff has failed to set forth in his complaint a claim for which relief may be granted, alleging that he has made only general, conclusional statements and has failed to set forth adequate factual information sufficient to provide a basis for his claim in accordance with Rule 8(a) (2) of the Federal Rules of Civil Procedure. It must first be noted that Rule 8(a) (2)

of the Federal Rules nowhere requires that the pleadings set forth "facts," but to the contrary, as noted in the notes of the Advisory Committee, 2A Moore, Federal Practice, Section 8.13 at p. 695, "the intent and effect of the rules is to permit the claim to be stated in general terms."

The function of pleadings under the rules is to give fair notice of the claim asserted rather than to set forth the "facts" upon which a claim for relief is based, *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court has carefully examined the complaint in this action and finds that, based upon the allegations contained therein, plaintiff has complied with the requirements of Rule 8(a) (2) and has set forth a sufficient statement of his various claims to avoid dismissal at this stage of the proceedings. Of course, as defendants note, plaintiff has not set forth detailed facts supporting the various allegations contained in the complaint, however, these facts may be secured by way of discovery and motion prior to trial on the merits.

## VI. SERVICE OF PROCESS ON THE UMW

Services of process on defendant UMW was made in this case by service upon James Leeber, Jr., President of District 29, UMW. The UMW challenges the sufficiency of such service, contending that Leeber is not its president. Plaintiff has failed to submit any evidence by way of affidavit, or otherwise, establishing the propriety of the service upon the UMW in response to this defendant's motion to quash. Plaintiff also neglected to refer to this question in his brief. It may be that plaintiff relied upon the ruling of this Court in *Lavender v. United Mine Workers of America*, 285 F.Supp. 869 (S.D. W.Va.1968), in which we held that service upon the then President of District 29 was effective to obtain jurisdiction over the UMW, since that officer was appointed by the UMW to administer

the affairs of District 29 and thus could be fairly described as an officer of the UMW. Were the factual situation in the instant case the same as the factual situation in *Lavender*, then, of course, the service would be proper because in *Lavender* the plaintiffs made an evidentiary showing sufficient to enable the Court to hold service of process adequate. However, as stated, no such showing has been made by the plaintiff here. The burden of establishing the validity of service is upon the party on whose behalf such service is made.

In view of our previous decision in *Lavender* and the fact that relief under the UMW motion would only be quashing of service of process and not dismissal of this action, the Court will defer ruling on this aspect of defendants' motion for ten (10) days to give plaintiff an opportunity to present evidence upon which the Court can make a finding. If no evidence is presented within such time, the Court will have no alternative but to quash service as to UMW.

### VII. EFFECT OF REFERRAL OF JAMISON'S CLAIM TO ARBITRATION

██ Though not raised in their motion, defendant unions contend in their reply brief that plaintiff, by submitting his claim to arbitration, is precluded from pursuing the claim in this court, citing Dewey v. Reynolds Metals Co., 429 F.2d 324 (6th Cir. 1970), aff'd. 400 U.S. 1008, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971), as authority for that proposition. However, the instant case is clearly distinguishable on the facts. Plaintiff in *Dewey* filed grievances on a claim identical to that set forth in his complaint. As previously noted, the plaintiff in the instant case asserted in his complaint various alleged discriminatory practices on the part of Olga and defendant unions with respect to his employment and the class he represents which were not before the arbitrator

who decided that he was not entitled to the promotion to motorman. Thus, the arbitrator's decision in that particular, even if it were to be held binding, has no bearing on the issues presently before the Court. Defendant unions' motion to dismiss on this ground accordingly will be denied.

### VII. MAINTENANCE OF SUIT AS CLASS ACTION

██ Defendants contend that, since the alleged discriminatory conduct did not occur within 90 days before filing the charge with EEOC, the Court has no jurisdiction with regard to plaintiff's claim and, therefore, has no jurisdiction over the suit as to any other person. Presumedly defendants refer to the fact that the refusal to promote plaintiff to motorman occurred more than 90 days before plaintiff filed his complaint with the EEOC. As pointed out previously, however, plaintiff's charge before the EEOC contained more than the single incident of alleged discrimination arising from the promotion. He also alleged that Olga denied Negroes promotions to better jobs and that Local 6026 failed to protest such discriminatory practices and refused to attempt to secure promotions and other job opportunities denied Negroes. Thus, as previously stated, the EEOC found reasonable cause to believe that Olga and Local 6026 were engaged in discriminatory practices as alleged by Jamison. Under such circumstances, defendants assertion that the Court does not have jurisdiction of Jamison's claim and, consequently, does not have jurisdiction to decide the claims of the class he proposes to represent is without merit, and the motion to dismiss on that basis is denied.

Defendants' assertion that the class action cannot be maintained because the complaint failed to state a claim upon which relief can be granted is also without merit inasmuch as the Court has held that the complaint does state a claim upon which relief can be granted.

With regard to the question of the appropriateness of a class action in this case, the Court notes that it has been almost universally recognized that suits charging racial discrimination are, by their very nature, class suits inasmuch as the alleged misconduct, by definition, is directed toward a particular class of people, in the present case Negro employees of Olga. 3B Moore's Federal Practice, 23.01, pp. 23–28.

 At this early stage in the proceedings, with only the complaint filed, it is difficult for the Court to make a valid assessment of the appropriateness of the use of the class suit, however, after careful examination of the complaint and documents submitted in conjunction with the motion to dismiss, the Court finds that the prerequisites of Rule 23(a) and 23(b) (2) of the Federal Rules of Civil Procedure have been met. The action, accordingly, is maintainable as a class action insofar as it seeks injunctive relief from the alleged discriminatory practices of Olga and defendant unions. The class which plaintiff represents are those Negroes who are employed or who might be employed by Olga at its mines and supporting facilities in Coalwood, West Virginia, and who are members or might become members of Local 6026, District 29, United Mine Workers of America.

Since, as previously noted, the ultimate direction of the present litigation is only partly discernible and development of evidentiary aspects of the case may reveal facts which might require reconsideration of the Court's ruling with respect to the appropriateness of the class action and the delineation of the class represented, this ruling is conditional and may be altered or amended before a decision on the merits in accordance with the provisions of Rule 23(c) (1) of the Rules.

An appropriate order in consonance with the views announced in this opinion will be entered.