**Virginia JACKSON, on behalf of herself and all others similarly situated, Plaintiffs,**

v.

**The UNIVERSITY OF PITTSBURGH, and Wesley W. Posvar, et al., Defendants.**

**Civ. A. No. 72-3.**

United States District Court, W. D. Pennsylvania.

Dec. 12, 1975.

---

Harold Gondelman, Pittsburgh, Pa., David Berger and Michael K. Simon, Philadelphia, Pa., Sylvia Roberts, Baton Rouge, La., for plaintiffs.

Charles C. Arensberg, Pittsburgh, Pa., David B. Isbell and E. Edward Bruce, Covington & Burling, Washington, D. C., for defendants.

## OPINION

SCALERA, District Judge.

Defendants, University of Pittsburgh, et al., have moved to dismiss under Rule 12, Federal Rules of Civil Procedure, each of the six counts of plaintiff Jackson's amended complaint.[1]

Jackson, a lab technician employed by the University of Pittsburgh from February 17, 1969 until September 1, 1970, on which date she was laid off, seeks damages and injunctive relief. Jackson avers · that Pitt refused to rehire or transfer her to another position and that since September 1, 1970, she has been denied employment because of Pitt's discriminatory policies and practices. She complains that Pitt and the individually named defendants and the defendant class engaged in a conspiracy to discriminate against her and other similarly situated women.

Plaintiff filed her amended complaint as a class action under Rule 23(a) and Rule 23(b)(2), Fed.R.Civ.P.,[2] on behalf of all women who are and have been employed by Pitt in non-faculty positions from February 1969 until the present, and all women who might have been employed by the University in non-faculty positions from February 1969 until the present, who have been, continue to be, or might be adversely affected by the discriminatory practices alleged in the complaint.[3]

In addition to the University and the other named defendants, plaintiff files her claims against a class of defendants comprising all past, present and future members of the Executive Committee of the Board of Trustees of Pitt during the period from February 17, 1969 until the present. Plaintiff avers that each defendant and each member of the defendant class is being sued both in an official and in an individual capacity and as a co-conspirator in Count V, which is based upon 42 U.S.C. § 1985(3).

### Count I—42 U.S.C. § 1981

In Count I, plaintiff avers that Pitt's alleged sexually discriminatory

---

1. Count I is based on the Civil Rights Act of 1866, 42 U.S.C. § 1981; Count II on the Civil Rights Act of 1871, 42 U.S.C. § 1983; Count III on Executive Order 11246, as amended by Executive Order 11375; Count IV on the Equal Pay Act, 29 U.S.C. § 206(d)(1); Count V charges the defendants with conspiring to violate plaintiff's civil rights (42 U.S.C. § 1985(3)), and Count VI is founded on the Civil Rights Act of 1964, as amended in 1972, 42 U.S.C. § 2000e et seq.

2. This court permitted plaintiff to amend the original complaint and to add additional defendants on October 15, 1974. The effect of the amended complaint was to: (1) change the basis of the plaintiff's class allegation from Rule 23(b)(3) to 23(b)(2); (2) add as individual defendants the present members of the Executive Committee of the Board of Trustees of the University; (3) add a defendant class of all present, future, and past members of the Executive Committee from 1969 to the present; (4) add a new cause of action (Count V) based on 42 U.S.C. § 1985(3), and (5) append, as Count VI, a cause of action based upon the Civil Rights Act of 1964, as amended, (effective March 24, 1972), 42 U.S.C. § 2000e et seq. At the time plaintiff filed her original complaint (January 1972), the 1964 Civil Rights Act did not apply to educational institutions. However, the 1972 amendments, effective several · months after the filing of the original complaint, removed Pitt's exemption.

3. Plaintiff estimates that the number of non-faculty women employees at Pitt exceeds 1900; the number of rejected job applicants and potential employees is unknown.

policies violate § 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.[4] Contrary to plaintiff's contention in her brief, it has been uniformly held in this court that 42 U.S.C. § 1981 provides no remedy for sex discrimination. *McIntosh v. Garofalo,* 367 F.Supp. 501 (W.D.Pa.1973); *Weyandt v. Mason's Stores,* 279 F.Supp. 283 (W.D.Pa.1968).

This viewpoint has been reasserted in two cases in this court in which the University of Pittsburgh is a defendant. In *Braden v. University of Pittsburgh,*[5] the trial court dismissed Count I of the plaintiff's complaint for the reason that § 1981 applies only to race discrimination. The decision in this case was reversed and remanded as to another count. In a concurring decision, one Judge of the Court of Appeals noted that he would have affirmed the dismissal of Count I based on the proposition

that 42 U.S.C. § 1981 applies only to racial discrimination. The district court in its decision after remand has again dismissed Count I for the same reason as its initial dismissal of the count.

In *Johnson v. University of Pittsburgh,*[6] the district court in an unpublished memorandum decision dated June 4, 1974 ruled that to the extent the plaintiff's complaint relied on 42 U.S.C. § 1981 the complaint was dismissed.

As noted by the United States Supreme Court in *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975):

"Title 42 U.S.C. § 1981 . . . on its face relates primarily to racial segregation in the making and enforcement of contracts. Although this Court has not specifically so held, it is well settled among the federal courts

---

**4.** 42 U.S.C. § 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**5.** In *Braden v. University of Pittsburgh,* Civil Action No. 71–646, the plaintiff's complaint contained four counts: Count I, based on 42 U.S.C. § 1981; Count II, based on 42 U.S.C. § 1983; Count III, based on Executive Orders Nos. 11246 and 11375; and Count IV, asserting violations of the Pennsylvania Equal Pay Law, 43 P.S. § 336.2 et seq. Chief Judge Sorg initially dismissed Counts I, II and III and refused to assume pendent jurisdiction over the state claim asserted in Count IV. D.C., 343 F.Supp. 836. On appeal, the Court of Appeals vacated and remanded only as to the district court's dismissal of Count II, based on § 1983. However, as to the dismissal of Count I, based on 42 U.S.C. § 1981, Judge Gibbons, in a concurring decision, stated that he would affirm the dismissal of that count. 3 Cir., 477 F.2d 1. On remand, the district court concluded that there existed the requisite "state action" between the University and the Commonwealth, and denied the motion to dismiss as to § 1983, and in light of this decision determined it to be appropriate to assume jurisdiction over the claim of Count IV based on state law. Judge Sorg again dismissed Count I and Count III.

D.C., 392 F.Supp. 118. The "state action" issue of § 1983 is pending in the Court of Appeals (App. No. C.A. 75–1657) on interlocutory appeal, Judge Sorg having certified this question of law under 28 U.S.C. § 1292(b). The appeal was docketed in the Third Circuit on April 29, 1975.

**6.** In *Johnson v. University of Pittsburgh,* Civil Action No. 73–120, the plaintiff's amended complaint consisted of five counts: Count I, based on 42 U.S.C. § 2000e et seq.; Count II, based on 42 U.S.C. § 1983; Count III, based on 42 U.S.C. § 1985(3); Count IV, based on Article I, § 28 of the Pennsylvania Constitution, and Count V, alleging a tortious interference with contractual relations under state law. In the only published opinion, Judge Knox granted plaintiff's motion for a preliminary injunction. D.C.; 359 F.Supp. 1002. In a memorandum decision, dated January 29, 1974, the district court dismissed from the case certain defendants who had not been properly served. In a memorandum decision dated June 4, 1974 the court dismissed from Count I (42 U.S.C. § 2000e et seq.) all those defendants who had not been named in plaintiff's charge filed with the Equal Employment Opportunity Commission, and ruled that to the extent that plaintiff's complaint relied on 42 U.S.C. § 1981 it was dismissed. On May 9, 1975, the court denied defendants' motion for summary judgment on Count III (42 U.S.C. § 1985(3)), and on May 26, 1975, denied defendants' motion for summary judgment on Count II (42 U.S.C. § 1983). This case is presently proceeding as a non-jury trial before Judge Knox.

of appeals—and we now join them—that § 1981 affords a federal remedy against discrimination in private employment on the basis of race." [footnote omitted]

Having alleged only sex discrimination, Count I of plaintiff's complaint will be dismissed.

### Count II—42 U.S.C. § 1983

■ Defendants move to dismiss Count II on the basis that there is not the requisite "state action" to maintain this charge against Pitt. Defendants' motion to dismiss was filed prior to Chief Judge Sorg's decision after remand in *Braden v. University of Pittsburgh, supra.* It was, of course, decided in *Braden* that Pitt's activities were clothed with the necessary "state action" for the purpose of 42 U.S.C. § 1983. This issue is presently on interlocutory appeal with the United States Court of Appeals for the Third Circuit. Chief Judge Sorg's decision on this issue in *Braden* is dispositive of the "state action" issue in the matter *sub judice.* The court concludes that defendants' motion to dismiss Count II will be denied.

### Count III—Executive Order 11246, as amended 11375, 42 U.S.C. Note to § 2000e

■ In her amended complaint, plaintiff avers that she is bringing Count III on the basis of Executive Order No. 11246, as amended by Executive Order No. 11375. Plaintiff states that Pitt is a contractor and subcontractor as defined in these Executive Orders, and that defendant Pitt has not taken affirmative action to insure that plaintiff and the members of her class are employed without regard to sex.

Defendants move to dismiss Count III on the basis that the Executive Orders do not confer upon an individual (or an organization) the right to sue to enforce the anti-discrimination mandate of these Executive Orders, or to challenge the de-

gree of compliance of the contractor with the orders. In *Braden v. University of Pittsburgh, supra,* Chief Judge Sorg held that a careful reading of these orders "discloses no provisions which suggest or create any right in an individual to seek injunctive relief or to assert a claim for damages against an alleged noncomplying contractor." Judge Dumbauld in *Bradford v. Peoples Natural Gas Company, Inc.,* 60 F.R.D. 432 (W.D. Pa.1973), also concluded that these orders charged the Secretary of Labor, not a private individual, with the responsibility for their enforcement. *Accord, EEOC v. Am. Tel. and Tel.,* 365 F.Supp. 1105 (E.D.Pa.1973); *Gnotta v. United States,* 415 F.2d 1271, 1275 (8th Cir. 1969) [Justice Blackmun]; *Farmer v. Philadelphia Elec. Co.,* 329 F.2d 3, 8–10 (3d Cir. 1964). In her brief in opposition to defendants' motion to dismiss, plaintiff does not respond to defendants' argument on this point. Therefore, Count III should be dismissed.

### Count IV—Equal Pay Act, 29 U.S.C. § 206(d)(1)

Defendants move to dismiss this count which is founded on the "Equal Pay Act" section of the Fair Labor Standards Act, 29 U.S.C. § 206(d)(1), on the basis that plaintiff was a mere "applicant for a job" and not an employee as this Act requires for its application. Defendants overlook the explicit averment of paragraph 4(b), p. 2 of the amended complaint, in which plaintiff states that she was employed by Pitt as a lab technician from February 11, 1969 to September 1, 1970.

In their brief, defendants advance the additional proposition that the plaintiff's Equal Pay Act claim under Count IV should be dismissed for the reason that plaintiff has relied on the incorrect class action procedure of Rule 23, Fed.R.Civ.P. Defendants contend that the Equal Pay Act has its own class action provision, 29 U.S.C. § 216(b)[7] which is distinct and

---

**7.** 29 U.S.C. § 216(b) provides in pertinent part: "Action . . . may be maintained . . . by any one or more employees for and in be-

half of himself or themselves and other employees similarly situated. No employee shall be party plaintiff to any such action unless he

unrelated to the normal class action covered by the procedure set out in Rule 23, and because Count IV does not specifically refer to this section as the basis for plaintiff's class action allegations, the entire count should be dismissed.

██ Plaintiff does not address herself to this contention in her brief filed in opposition to defendants' motion to dismiss. From the amended complaint itself, it is unclear whether plaintiff is basing the class allegations of Count IV on Rule 23 or 29 U.S.C. § 216(b). Defendants are correct in their argument on this point to the extent that the Equal Pay Act's class action provisions are distinct and independent of those of Rule 23. *See Bradford v. Peoples Natural Gas Company, Inc.,* 60 F.R.D. 432, 437 (W.D.Pa.1973); *Paddison v. Fidelity Bank,* 60 F.R.D. 695, 700 (E.D.Pa.1973), and *Maguire v. Trans World Airlines, Inc.,* 55 F.R.D. 48 (S.D.N.Y.1972). However, the defendants cite no authority for the proposition that plaintiff's failure to specifically refer to 29 U.S.C. § 216(b) as the basis of the class action averred in this count is in itself a reason to dismiss Count IV.

The motion to dismiss will be denied.

### Count V—42 U.S.C. § 1985(3)

Count V of the amended complaint is based upon 42 U.S.C. § 1985(3)[8] which provides for damages in the case of a conspiracy by two or more persons for the purpose of depriving any person or class of persons of the equal protection of the laws. In paragraph 20(c) of plaintiff's amended complaint, she charges in general terms that the named defendants and their class participated in, encouraged, acquiesced in, and conspired in the sexually discriminatory practices of the University. Plaintiff avers in paragraph 8, p. 8 of her amended complaint that each defendant and each member of the defendant class is being sued both in an individual as well as representative capacity, and as a co-conspirator and that "liability arises from the fact that each has either engaged or is engaged in all or part of the unlawful acts charged. . . . "

Defendants move to dismiss this count for three reasons: (1) the amended complaint fails to establish acts which legally constitute a conspiracy under § 1985; (2) that depositions of certain individual defendants show that there is no factual basis for the § 1985(3) claim against them; and (3) 42 U.S.C. § 1985(3) is unconstitutional as applied to this case.

██ Defendants first contend that the individual defendants and the defendants' class are all agents of defendant University and thus the defendants' actions on behalf of or in furtherance of the University cannot constitute the actions of two or more persons as the traditional notions of conspiracy law require. Defendants maintain that the ac-

gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

8. 42 U.S.C. § 1985(3) being part of the Civil Rights Act of 1871 reads as follows: "If two or more persons in any State or Territory *conspire* or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws, or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

tions of the individually named defendants and their class are the actions of a single entity—the University—and therefore no conspiracy under 42 U.S.C. § 1985(3) can exist.

Defendants have not convinced the Court that the case of *Dombroski v. Dowling,*[9] 459 F.2d 190 (7th Cir. 1972), is the controlling law on this point. Judge Knox rejected an identical argument made by defendants in *Johnson, supra,* in his memorandum decision of May 9, 1975, where he referred to *Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D.Pa.1974), as the better expression of the law in this circuit. In *Rackin, supra,* the district court rejected a similar argument and found the *Dombrowski* decision inapplicable.

■ Defendants secondly argue without analysis or discussion that portions of the depositions of defendants Posvar, Rea, Hillman, Ahlbrandt and Falk, taken in *Johnson, supra,* demonstrate that there exists no factual basis for the § 1985(3) count against these defendants.

Stipulations and orders of approval dated October 17, 1973 and October 15, 1974 provide that depositions and interrogatories taken in *Braden* and *Johnson* may be introduced into evidence on the issue of state action in this case. Whether the stipulation permits the depositions of these defendants to be introduced in general and on other issues in this case is unclear.

In addition, defendants designated their pleading as a motion to dismiss under Rule 12(b), Fed.R.Civ.P. In referring to the depositions defendants have now presented matters outside the pleadings. The court cannot consider such matters unless it treats the motion as a motion for summary judgment and disposes of it as provided in Rule 56, Fed.R. Civ.P. Of course, the rules provide that all parties must be given the opportunity

to respond with material made pertinent to such a motion by Rule 56.

The record does not indicate that plaintiff was apprised of the possible transformation of defendants' motion to dismiss into a motion for summary judgment, and thus afforded the opportunity to respond. Under these circumstances and particularly in view of defendants' failure to clarify the stipulations governing the admissibility of the depositions on this point, the court is not inclined to grant such a motion.

■ Defendants third argument is that if 42 U.S.C. § 1985(3) should be construed to cover sex discrimination, then the same is unconstitutional as being beyond the reach of Congressional power. It is contended that § 1985(3) was originally enacted to cover only racial discrimination under the Thirteenth and Fourteenth Amendments. The Supreme Court in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), indicated that § 1985(3) may apply to "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." We will decline to decide the constitutional scope of § 1985(3) at this time because constitutional questions are to be avoided unless absolutely necessary to the decision of the case. *See Johnson v. University of Pittsburgh, supra* (Memorandum of June 4, 1974).

The motion to dismiss as to this count will be denied.

### Count VI—Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e et seq.

Title VII of the Civil Rights Act of 1964 prohibits unions and employers from discriminating on the basis of race, color, sex, religion or national origin. A person who claims to be aggrieved under these provisions initiates the enforcement process by filing a charge describing the alleged violations of Title VII

---

**9.** In *Dombrowski v. Dowling, supra,* the court held that an alleged conspiracy between the landlord corporation and certain agents thereof to discriminate against an attorney tenant because of the class of his clientele did not fall

within § 1985(3) since the challenged conduct was essentially a single act of a business entity and the fact that two or more agents participated in the decision did not constitute a conspiracy.

with the Equal Employment Opportunity Commission (EEOC). The EEOC may then investigate to determine whether there is reasonable cause. If reasonable cause is shown, the EEOC is then statutorily mandated to pursue informal attempts to correct the unlawful practice through conference and conciliation. 42 U.S.C. § 2000e–5(b). If the EEOC is unable to obtain voluntary compliance with Title VII, the charging party will be notified and within 90 days of such notice may bring a civil action in federal district court. 42 U.S.C. § 2000e–5(f)(1).

Defendant attacks this count in two ways. At the time plaintiff filed her original complaint in January 1972, the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1, did not apply to educational institutions like Pitt. The 1972 Amendments to the Act, effective March 24, 1972, abolished the exemption.

■ In May 1972, plaintiff filed her charge with the EEOC pursuant to the requirements of 42 U.S.C. § 2000e–5. Defendants note that in the EEOC charge,[10] plaintiff stated in item # 6 that the most recent date on which the alleged sex discrimination took place was in January of 1972. Therefore, defendants contend that the plaintiff's charge of sex discrimination against Pitt was fully completed prior to the effective date (March 24, 1972) of the Congressional amendment which made Pitt non-exempt.

From this statement in the EEOC charge, defendants contend that all the acts of discrimination averred by plaintiff must have taken place by January 1972, and therefore the acts of which the plaintiff complains would have been fully completed approximately two months prior to the effective date of the amendment to Title VII.

Reading the plaintiff's amended complaint, and giving her all favorable infer-

ences of fact which the pleading could reasonably support, it appears that plaintiff has averred discriminatory acts by the University which took place after March 24, 1972. In paragraph numbered 20A of the amended complaint, plaintiff alleges that "Since February 17, 1969 and continuing up to the present defendants . . . have . . . denied equal employment to plaintiff and the plaintiff class." In her brief, plaintiff contends that the allegation of sex discrimination in employment practices of an institution like Pitt is by its very nature an allegation of a continuing violation of Title VII.

The court in *Johnson v. University of Pittsburgh, supra,* was presented with a similar argument by the University. Judge Knox concluded:

"The Supreme Court has held that the purpose of the Civil Rights Act is to achieve equality in employment opportunities and remove barriers which operated in the past. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In *Walker v. Kleindienst,* 357 F.Supp. 749 (D.C.1973) it was held that the 1972 amendments are remedial in nature and cover charges of discrimination pending before the Civil Service Commission or which were at some other stage of the remedial process on March 24, 1972 when the amendments took effect. The 1972 amendments also extended Title 7 to cover discrimination in Federal employment and present substantially the same situation as to it as the extension to an educational institution." 359 F.Supp. at 1007.

Defense counsel, in a letter mailed to the court, refers to the case of *Jones v. United States of America,* 376 F.Supp. 13 (D.C.1974), and to footnote eight in the case of *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 639, 94

---

10. Again, the court has been referred by defendants to matters beyond the pleadings. Thus, the copy of the charge with the EEOC was attached to defendants' motion to dismiss. This transforms the motion into a motion for summary judgment. Here the court accepts the evidence because of the limited and specific nature of the extension beyond the pleadings and the fact that there is no doubt that plaintiff had an opportunity to respond to this material.

S.Ct. 791, 39 L.Ed.2d 52. The court in each case concluded that the 1972 Amendments to Title VII did not apply. The cases are distinguishable from the matter *sub judice*. In *Jones, supra,* it was uncontroverted that the alleged discriminatory acts occurred prior to March 24, 1972, and in *Cleveland Board of Education, supra,* it was also clear that the teacher-plaintiffs were protesting their local school's mandatory maternity rule during the 1970–71 school year. The court does not find defendants' first contention advanced in support of their motion persuasive.

Defendants' second argument for dismissal is that certain persons named as defendants in this count were not named as respondents by plaintiff when she filed her charge with the EEOC. In the charge filed with the EEOC on May 1, 1972, the plaintiff named only the University of Pittsburgh as a respondent. The plaintiff has named in her complaint Chancellor Wesley Posvar, certain trustees and members of the University's Executive Committee and a defendant class of all members of the Executive Committee from February 17, 1969 until the present.

Defendants maintain that the court lacks jurisdiction over those persons not named as respondents before the EEOC, and argue that the Title VII action should be dismissed against all persons except the University because plaintiff has failed to comply with the procedural and jurisdictional prerequisite set out in 42 U.S.C. § 2000e–5(f)(1).[11]

This jurisdictional prerequisite serves two important functions: first, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law. *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719 (7th Cir. 1969).

The conciliation process of Title VII generally and, more particularly, of § 2000e–5(f)(1), provides the respondent with an informed atmosphere in which it may explain, or justify its conduct before the formal litigation attracts widespread notoriety. Very often the complainant and the respondent may amicably reach an agreement without the animosities sometimes formed by filing of the civil suit. Voluntary compliance efforts are also preferred because they are less time-consuming and, quite frequently, broader, more flexible forms of relief are available. *Bowe v. Colgate-Palmolive Co., supra; Johnson v. Seaboard Air Line Railroad Co.,* 405 F.2d 645, 651 (4th Cir. 1968), *cert. denied sub nom., Pilot Freight Carriers, Inc. v. Walker,* 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969).

An actual attempt by the EEOC to eliminate an unlawful employment practice is not a jurisdictional prerequisite to the institution of a civil suit. Rather, the policy of the Act is satisfied as long as the EEOC has been given the opportunity to negotiate and conciliate an unlawful employment practice charge in order that voluntary compliance may be obtained without the filing of a civil suit. *Stebbins v. Nationwide Mutual Ins. Co.,* 382 F.2d 267, 268 (4th Cir. 1967), *cert. denied,* 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968); *Miller v. International Paper Co.,* 408 F.2d 283, 288–91 (5th Cir. 1969).

Defendants refer the court to a uniform line of cases beginning with *Mickel v. South Carolina State Employment Service,* 377 F.2d 239 (4th Cir.), *cert. denied,* 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967), for the proposition that a person or entity who was not named as a respondent in a charge before the EEOC cannot later be made party to a civil suit arising out of that charge. *Bowe v. Colgate-Palmolive Co., supra; LeBeau v. Libbey-Owens-Ford Company,* 484 F.2d 798, 799–800 (7th Cir.

11. In *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 246, n. 8 (3d Cir. 1975), the Court of Appeals, while discussing different aspects of the procedural requirements of the 1964 Civil Rights Act, did note that the filing of a charge with the EEOC is a jurisdictional requirement.

1973); *Jamison v. Olga Coal Co.*, 335 F.Supp. 454, 460–461 (S.D.W.Va.1971); *Butler v. Local No. 4 and Local No. 269, Laborers' International Union*, 308 F.Supp. 528, 530–531 (N.D.Ill.1969).

Plaintiff does not dispute the rule of law enunciated in this line of cases. Rather, plaintiff contends that the rule stated above does not apply to the present factual situation because of the agency relationship that exists between the unnamed Chancellor and the members of the Executive Committee, and the named University. Plaintiff's counsel argues that the policy behind the filing requirements of 42 U.S.C. § 2000e–5(b) and (f)(1) was satisfied as to those individuals unnamed in the EEOC charge because when the University was named as a respondent, the Chancellor and the trustees as members of the University's Executive Committee would have been likely notified of the plaintiff's EEOC charge. Whether these unnamed persons were in fact notified of the filing of plaintiff's charge with the EEOC is not shown in the materials presented by plaintiff. There is, furthermore, no evidence in the record that these unnamed persons and class of persons had the opportunity to meet with the EEOC representatives in any conciliatory conferences.

To support her agency proposition, plaintiff relies on the case of *Chastang v. Flynn and Emrich Co.*, 365 F.Supp. 957 (D.Md.1973), and *Hairston v. McLean Trucking Co.*, 62 F.R.D. 642 (M.D.N.C. 1973). In *Chastang v. Flynn and Emrich Co., supra*, the plaintiff named the company, his employer, as respondent in his charge before the EEOC. However, in the subsequent civil suit, plaintiff also named as defendants the five members of Flynn & Emrich Company's Profit Sharing Trust Committee. The Trust Committee members claimed that the court lacked jurisdiction over them because they were not named as respondents before the EEOC. The district court rejected their contention because of the substantial identity of parties before the EEOC and the court. The facts

in *Chastang* reveal that three of five Trust Committee members were also officers and/or directors of Flynn and Emrich Company. The court concluded that these three persons, although they acted in different capacities as trustees and officer-directors, were undoubtedly among the persons with whom the EEOC would have had to deal with to obtain voluntary compliance. The court concluded that "it would require an unnecessarily technical and restrictive reading of 42 U.S.C. § 2000e–5 to hold that this court lacks jurisdiction over the members of the Trust Committee because they were not named before the Commission . . . ." 365 F.Supp. at 964.

In *Hairston v. McLean Trucking Co., supra*, the court rejected a similar argument proposed by Modern Automotive Services, Inc. (MAS). MAS was McLean Trucking Company's wholly-owned subsidiary which serviced McLean's trucks and equipment. MAS claimed that it was not within the jurisdiction of the court because it was not named as a respondent before the EEOC. The plaintiff in *Hairston* named as respondent "McClean [sic] Trucking Company (MAS)." Noting that complaints filed before the EEOC are to be construed liberally, the court found that (1) an agency relationship in fact existed between McLean and MAS, and (2) the EEOC *had actually* investigated both MAS and McLean.

On the other hand, defendants refer the court to several cases wherein the agency theory proposed by plaintiff was rejected and the statutory language of § 2000e–5(f)(1) was strictly construed to permit the filing of a civil suit only against those named as respondents in the EEOC charge. In *Jamison v. Olga Coal Company, supra*, 335 F.Supp. at 460–461, the plaintiff desired to name three union entities as defendants (Local Union No. 6026, District Union No. 29, and the national union, United Mine Workers of America), and Olga Coal Company, although plaintiff's charge with the EEOC had named only Local

6026 and Olga Coal as respondents. In *Jamison*, the court felt that the language of the statute was clear and unequivocal and therefore ordered the dismissal of plaintiff's Title VII claims insofar as they related to District 29 and to the U.M.W. The court reasoned that if, as plaintiff alleged, Local 6026 was a mere instrumentality or agent of District 29 or the U.M.W., then any efforts by the EEOC to resolve the dispute between Local 6026 and the plaintiff would be futile because the parties with apparent power to voluntarily alleviate the grievances would not be before the EEOC. 335 F.Supp. at 461.

Similarly in *Butler v. Local No. 4 and Local No. 269, Laborers' Int. Union, supra*, 308 F.Supp. at 530–531, the court rejected plaintiff's attempt to name the District Council of Local Unions as a defendant in the civil suit because the Council had not been named as a respondent before the EEOC. The plaintiff had named only the local unions as respondents before the EEOC. The unnamed District Council was composed of delegates from each of the union's locals in the Chicago area. The members of the District Council in turn elected officers, whose duty was to bargain for and bind the locals to agreements with the employers in that industry. The district court granted the District Council's motion to dismiss, noting:

"It is the position of the plaintiff . . . that the statute's definition of labor organization to include any agent of such organization, 42 U.S.C. § 2000e(d), extends jurisdiction in this Court to any agent of a party charged before the Commission. This Court does not agree. Defining a labor organization to include its agents delineates the scope of application of the sections of Title VII prohibiting unlawful employment practices. It does not suggest that the term 'respondent' as used in 42 U.S.C. § 2000e–5(e) has the same meaning. According to the definition, the activities of agents of labor organizations are subject to the provisions of Title VII. However, the charging of one before the EEOC does not make a respondent of the other." 308 F.Supp. at 531.

It cannot be said that the mere allegation of an agency relationship does, without more, constitute sufficient notice to comply with the statutory mandate of § 2000e–5(f)(1) except where there is a "substantial, if not complete, identity of parties before the EEOC and the court," (*cf. Chastang v. Flynn and Emrich Co., supra* ), or except where the EEOC actually had the opportunity to meet and attempt to conciliate with the party unnamed in the EEOC charge yet named as a defendant in court. *Hairston v. McLean Trucking Co., supra*. Although we find the agency theory discussion in these four cases illuminating, the court does not feel that the holding of any one of these cases is controlling in the instant proceeding since it appears self-evident that the very nature of the agency issue in a 2000e–5(f)(1) context is one that turns on the specific facts of the case.

The authority of two other cases persuades us to adopt defendants' contention and to hold that we have no jurisdiction over those persons and that class of persons unnamed in plaintiff's EEOC charge. In *Johnson v. University of Pittsburgh*, Civil Action No. 73–120 (filed June 4, 1974), Judge Knox confronted with the identical issue and nearly the same factual setting, dismissed Chancellor Posvar, individual members of the Executive Committee of the Board of Trustees of Pitt, and the Board of Trustees as defendants from plaintiff's Title VII count because of her failure to name these persons in her charge before the EEOC. Judge Knox held in as defendants under the Title VII count only those persons named as respondents in the plaintiff's EEOC charge. Thus, Judge Knox strictly construed the statutory requirement of § 2000e–5(f)(1).

Judge Schwartz in *Scott v. University of Delaware, supra*, was confronted with the same issue in a similar factual context. In *Scott*, 385 F.Supp.

937, plaintiff, a black assistant professor at the University of Delaware, named only the University in his charge filed with the regional EEOC office. The EEOC provided notice of the charge only to the executive officer of the University. In his complaint filed with the district court, Scott named the University, the Board of Trustees, the members of that Board in their official and individual capacities, and various officers and faculty members of the University as defendants in his Title VII count. The plaintiff sought to overcome his failure to name all the defendants in his EEOC charge by referring the court to familiar notions of the law of agency and by stating that "notification to a university, etc., under agency principles, is sufficient to alert the individuals vested with responsibility for its operation." 385 F.Supp. at 937. The court rejected plaintiff's argument and dismissed the Title VII action with respect to each named defendant except for the University. In *Scott*, the court, while recognizing that liberality in construction should be favored especially where a layman files the charge, *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 461 (5th Cir. 1970), concluded that because minimum standards of statutory compliance were necessary to comport with the statutory emphasis on voluntary compliance and conciliation in § 2000e–5 and because there was nothing in the record to indicate that persons unnamed in the EEOC charge knew of the EEOC proceeding or that they had been the subject of an EEOC inquiry, they would be dismissed. *Id.* at 942.

The court concludes that Count VI—based on Title VII should be dismissed as to all those defendants who were not named in plaintiff's charge filed with the EEOC.

An appropriate order will be entered.

### APPENDIX

### HISTORY

Plaintiff's original complaint was filed on January 3, 1972. On January 28, 1972, plaintiff filed a motion under Rule 23(c)(1) that the court rule on the issue of maintaining this case as a class action. On the same day, defendants filed their answer, averring *inter alia* that the court lacked jurisdiction of the subject matter of the action. Defendants also requested a preliminary hearing.

On February 28, 1972, the court ordered briefs and scheduled oral argument on the outstanding motions for March 28, 1972. Several days later, on March 3, 1972, defendants filed a motion requesting that the court postpone the Rule 23(c)(1) class action determination and that the court proceed to first dispose of the jurisdictional defenses raised by the defendants. On March 28, 1972, the argument scheduled for that date was continued to a future date at the request of plaintiff's counsel, with the consent of defendants' attorney. The March 28, 1972 oral argument was rescheduled on May 8, 1972 for May 25, 1972. This date was inconvenient for plaintiff's counsel, so pursuant to another motion for continuance filed by the plaintiff and consented to by defense counsel, the hearing was continued on May 23, 1972 until a future date. Thereafter, the oral argument was rescheduled for September 11, 1972.

On September 7, 1972, the parties jointly moved to stay all proceedings in this case "pending the Third Circuit Court of Appeals' ruling on the jurisdictional issue" (the "state action" issue) raised in *Braden v. University of Pittsburgh, supra*. This court entered an order staying the proceedings on the same day. On April 24, 1973, the Court of Appeals in *Braden* vacated the trial court's dismissal of the 42 U.S.C. § 1983 claim and remanded the case for the development of a more extensive record. *Id.* 477 F.2d 1.

The court, on June 11, 1973, scheduled the case for a status conference on June 21, 1973. This date was inconvenient for plaintiff's counsel, and therefore the court pursuant to plaintiff's motion, consented to by defense counsel, continued the conference to a future date.

On October 17, 1973, the court approved the parties' stipulation which provided that interrogatories or depositions taken in the case of *Johnson v. University of Pittsburgh, supra,* or in *Braden v. University of Pittsburgh, supra,* on the issue of Pitt's state involvement may be introduced as evidence in this case because, of course, the relationship of the University to the Commonwealth of Pennsylvania is identical in all three cases. A similar stipulation, which proposed to permit the introduction into evidence in this case on the issue of state action of depositions taken of certain individual defendants[1] in the *Johnson* and *Braden* cases was approved by the court on October 15, 1974.

On December 27, 1973, this court scheduled a status conference for January 9, 1974. This date was inconvenient for plaintiff's counsel, so on the motion of plaintiff, consented to by defendants, the court rescheduled the conference for January 16, 1974. Plaintiff's Philadelphia counsel was unable to come to Pittsburgh on the 16th of January because of inclement weather and the status conference was rescheduled for January 18, 1974. At the status conference, plaintiff indicated a desire to amend the complaint. Defendants indicated an intent to approve the effort to amend. The court suggested that plaintiff file a motion to amend the complaint accompanied by a brief within thirty days, that defendants file a responsive brief within thirty days thereafter, and that plaintiff was to file a supplemental and responsive brief fifteen days after the filing of defendant's brief. Plaintiff's counsel was unable to prepare the motion and the accompanying brief within thirty days. The court, upon motion of plaintiff for an extension of time, consented to by defendants, granted plaintiff an additional ten days to file the motion. The motion to amend, the amended complaint and a supporting brief were filed by plaintiff's counsel on March 1, 1974.

One month later, defendants filed a motion in opposition to plaintiff's motion to amend the complaint, supported by an appropriate brief. This court granted plaintiff's motion to amend the complaint on October 15, 1974.

Defendants, on January 31, 1975, responded to the amended complaint by filing a motion to dismiss each of the six counts of plaintiff's complaint. A brief accompanied defendants' motion to dismiss. On February 4, 1975, this court ordered plaintiff to file a brief in support of her position within thirty days. On March 6, 1975, pursuant to plaintiff's motion for more time, which motion was consented to by defendants, the court permitted plaintiff to have additional time until March 11, 1975 to file her brief in response to defendants' motion. The brief was filed on March 11, 1975.

---

1. The individual defendants were William H. Rea, University Chancellor Wesley Posvar,

Leon Falk, Jr., Roger S. Ahlbrandt and Henry L. Hillman.