**Nicholas KUTSKA, Plaintiff,**

v.

**CALIFORNIA STATE COLLEGE, DEPARTMENT OF EDUCATION, Commonwealth of Pennsylvania et al., Defendants.**

Civ. A. No. 75–114.

United States District Court,
W. D. Pennsylvania.

March 31, 1976.

Emil E. Narick, Pittsburgh, Pa., for plaintiff.

Jack E. Solomon, Slippery Rock, Pa., for defendant.

## OPINION

GOURLEY, Senior District Judge:

This is a civil nonjury proceeding filed by the plaintiff, Nicholas Kutska, pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A., § 2000e et seq. The Court has afforded the parties a full and complete trial and has considered the briefs and arguments of counsel. Based thereon, it is the considered judgment of the Court that the defendant, California State College, committed no unlawful employment practices in violation of plaintiff's civil rights.[1]

1. Two complaints were filed in this proceeding. Civil Action No. 74–1011 naming only California State College as a defendant was filed on October 18, 1974, and was dismissed without prejudice by consent of counsel on January 29, 1975. The instant complaint, Civil Action No. 75–114, was filed on January 23, 1975, and named the above-captioned individuals as defendants as well as California State College.

A most thorough and exhaustive review of the record discloses that at no time prior to commencing either action in this Court did the plaintiff ever file a charge with the Equal Em-

The facts may be briefly stated. The plaintiff, Nicholas Kutska, is an individual of Slavic origin who was employed by the defendant, California State College, as a part-time faculty member to teach a Russian language course. Plaintiff held this position from the summer term of 1971 up to and including the spring term of 1972. At the conclusion of the spring term in 1972 plaintiff's contract was not renewed nor were his services retained because of his refusal to sign an acknowledgement that his employment was on a temporary basis. Also during the spring of 1972, the defendant College hired Dr. Bruce Weston as Director of its Slavic and Eastern Studies Program, a position which plaintiff expressed interest in, but was informed that he was not qualified to fill.

The question for this Court's determination is whether or not the defendant College's dismissal of plaintiff from his temporary part-time teaching position as well as the failure to consider him for the position as Director of defendant's Slavic and Eastern Studies Program was based on some constitutionally impermissible reasons such as plaintiff's national origin.

The plaintiff contends that in 1971 he was hired by the defendant College as a part-time associate professor to organize and set up a Russian language course for the College with the assurance that if said course was feasible and favorably received by the students he would continue to be employed as a part-time or even possibly a full-time teacher. Plaintiff asserts, however, that because of his national origin (Carpatho-Russian) he was forced out of his temporary teaching position and not even considered for a permanent position.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A., § 2000e–2 provides as follows:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

■ The law is well settled that in a Title VII action to establish a prima facie case an aggrieved person must show: (1) that he belongs to a national minority; (2) that he applied and was qualified for a job the employer was trying to fill; (3) that although qualified, he was refused; and (4) that the employer continued to seek applicants with the complainant's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ For reasons which will now be discussed the Court does not believe that a case of discrimination based on "national origin" has been made out by the plaintiff. Moreover, even after a full and fair opportunity was afforded to him, plaintiff has failed to persuade this Court that defendant's reason for dismissing him, as well as not considering him for a permanent post, was founded on some discriminatory reason or that defendant's hiring and recruiting policy had the effect of excluding persons of Slavic origin. The only fact plaintiff was able to establish was that he was a member of a "national minority".

Plaintiff was a non-tenured "associate professor" in a state operated college and under Pennsylvania contract law and university tenure regulations he had

ployment Opportunity Commission against the named defendants, George H. Roadman, President; Thomas Howard, Vice-President; or Philip Y. Coleman, Dean of Arts and Sciences. Because of plaintiff's failure to comply with the procedural and jurisdictional prerequisites set forth in 42 U.S.C.A., § 2000e–5(f)(1), the Court is compelled to dismiss plaintiff's claim against all parties in Civil Action No. 75–114, except California State College, for lack of jurisdiction. See: *Wetzel v. Liberty Mutual Insurance Company*, 508 F.2d 239 (3rd Cir., 1975); *Scott v. University of Delaware*, 385 F.Supp. 937 (D.C.Delaware 1974); *Jackson v. University of Pittsburgh*, 405 F.Supp. 607 (W.D.Pa.1975).

no property interest in continued employment. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); See also: *State Colleges Act,* 24 P.S., § 20–2001 et seq. It appears, however, that plaintiff bases his right to continued employment as a temporary part-time teacher on the fact that he fulfilled his part of the oral bargain between himself and the President of the College, Dr. Roadman. Plaintiff claims that Dr. Roadman promised him that he would continue to be employed as a Russian teacher as long as the course was a success. Dr. Roadman, however, denies ever making such a statement. A most careful examination of the evidence fails to reveal any basis upon which this Court could conclude that plaintiff's dismissal was the result of discrimination. Plaintiff readily admitted, when he began employment at the defendant College, he was well aware of defendant's desire to obtain a person with a Doctorate in plaintiff's field but that the funds for such a person were not readily available. The Court can find nothing discriminatory or unlawful in defendant's decision not to retain plaintiff's services after the spring of 1972. Mere conclusory allegations of discrimination propounded by the plaintiff is not enough to support his claim.

■ As stated in *Griggs v. Power Company,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971):

"Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed."

Plaintiff suggests, however, that the failure of the defendant to renew his contract as well as the failure to consider him for the position as Director of the Slavic and Eastern Studies Program is in some way indicative of defendant's discriminatory employment policies towards Slavic persons as a whole and plaintiff in particular.

Although plaintiff contends that he was performing the same job in which Dr. Weston now performs, the record reveals otherwise. Dr. Weston's duties, in addition to teaching, elementary Russian courses previously taught by the plaintiff, included the teaching of various courses in literature and culture of Western and Eastern Europe. His non-teaching duties included the directing of the College's ethnic and heritage center, choosing the Slavic studies committee and writing proposals for financial support from outside public and private agencies.

A comparison of the educational qualifications between Dr. Weston and that of the plaintiff quickly dispels any notion that the plaintiff was not considered for the position as Director of the Slavic and Eastern Studies Program because of his Slavic origin.[2] Certainly the defendant College not only has the right, but the obligation as well, to hire the most qualified person available. Just because Mr. Kutska may be qualified to teach Russian, this does not automatically qualify him to head the Slavic Studies Program. As indicated above, the duties and responsibilities of a director of such a program are varied and complex and require the skills and training of an individual who can do more than teach courses in Russian.

---

**2.** Plaintiff has a Bachelor's Degree in Education, Driver's Training, and Industrial Arts. He has taken a few graduate courses in Russian and has taught high school Russian for an extensive period. Plaintiff also holds a master equivalent certificate which is used solely for salary purposes in secondary and elementary schools and is not regarded as a qualification for teaching.

Dr. Weston, on the other hand, has a Doctorate in Russian, a Masters Degree in Slavic language, and Literature, a Bachelor's Degree in Russian, extensive higher education teaching experience, has published many articles and has read many papers at several educational conferences.

In choosing a person to be the Director of its Slavic and Eastern Studies Program, the defendant placed considerable weight upon: (1) the applicant's higher educational teaching experience; (2) the applicant's amount and quality of graduate study; (3) the applicant's earned post baccalaureate degrees such as the Master and Doctorate; (4) the applicant's publications in scholarly journals and the papers read before learned societies; and (5) the applicant's depth and blend of knowledge in his area of specialization. After reviewing these criteria most extensively the Court is of the firm opinion that they do not discriminate nor do they have a tendency to discriminate against persons of Slavic origin. Clearly, defendant's only objective was to obtain the most qualified individual possible for this position, regardless of his race, color, sex, religion, or national origin.

█ Finally, the Court can find no merit to plaintiff's contention that the statistical evidence introduced at trial establishes a prima facie case of discrimination on the part of the defendant. Very simply, plaintiff's statistical evidence is incomplete and, therefore, is too misleading to be of any probative or material value.

In view of the above, the Court can only conclude that the defendant committed no constitutionally impermissible employment practices in violation of plaintiff's civil rights and that its hiring and promotional system was not only fair on its face but also fair in its operation so as not to exclude from employment or promotions persons of Slavic origin.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.

### ORDER

AND NOW, this 31st day of March, 1976, judgment is hereby entered in favor of the defendant, California State College, Department of Education, Commonwealth of Pennsylvania, and against the plaintiff, Nicholas Kutska.

IT IS FURTHER ORDERED AND DECREED that the within action by the plaintiff, Nicholas Kutska, against George H. Roadman, President, Thomas Howard, Vice-President, and Philip Y. Coleman, Dean of Arts and Sciences, is hereby dismissed with prejudice. Costs are to be paid by the plaintiff.