**Archie PETERSON and Robert Doster, Individually and on behalf of a class of all others similarly situated**

v.

**LEHIGH VALLEY DISTRICT COUNCIL, United Brotherhood of Carpenters and Joiners, and General Contractors Association of Lehigh Valley, Inc. and Local No. 368 and Walter D. Fries, Fred Miller and John Larsen.**

Civ. A. No. 76–2937.

United States District Court, E. D. Pennsylvania.

June 9, 1978.

Charles W. Bowser, W. H. Bishop, III, Philadelphia, Pa., for plaintiffs.

Charles W. Johnston, Jr., Harrisburg, Pa., James T. Giles, Marjorie G. Marinoff, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Plaintiffs are bringing this action under 42 U.S.C. §§ 1981 and 1983, the First, Thirteenth and Fourteenth Amendments, 42 U.S.C. § 2000e, *et seq.* (Title VII) and 29 U.S.C. § 185 (§ 301), alleging that while plaintiffs were employed by G. & Q. Drywall Company (G. & Q. Drywall) the defendants subjected them to racially discriminatory conduct in that they denied plaintiffs membership and admittance into Local No. 368 (the Union) and into the Lehigh

Valley Carpenters' Apprentice Program (the Apprentice Program), and that as a result of these actions and refusal of Union officials to represent plaintiffs in wage disputes with their employer, G. & Q. Drywall, and to properly instruct plaintiffs in work rules in the construction industry, plaintiffs were discharged from employment.

All defendants move to dismiss for a variety of reasons. We note initially that all parties, including the plaintiffs, agree that Counts IV and V of the Complaint, alleging violations of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (§ 301), cannot be maintained against individuals. However, in the Second Amended Complaint, Counts IV and V are not being brought against the individual defendants. Therefore, their motion to dismiss those counts is moot.

## THE MOTION OF THE CONTRACTORS ASSOCIATION

The General Contractors Association of Lehigh Valley, Inc. (the Contractors Association) moves to dismiss all counts of the Second Amended Complaint (the Complaint).

■ *The Civil Rights Claims*: First of all, the Association contends that the allegations of violations of 42 U.S.C. §§ 1981 and 1983 (1981 and 1983) and the First, Thirteenth and Fourteenth Amendments are insufficiently clear and specific to give rise to a cause of action. The Complaint alleges "discriminatory conduct", but does not describe the conduct. While the Contractors Association is the collective bargaining agent for an association of employer contractors, each of whom chose to be bound by the terms of a collective bargaining agreement with the Lehigh Valley District Council United Brotherhood of Carpenters and Joiners (District Council), the Association has no right to supervise the actions of the contractors with regard to their employees or the District Council. Therefore, the Association has not been properly charged with conduct specifically resulting in harm to the plaintiffs.

■ However, forceful these arguments may be, they are nonetheless contentions of fact not properly before the Court on a motion to dismiss. The Complaint does allege that the Association, through some of its members, participated in the obstruction of plaintiffs' entry into the Apprentice Program. Whether the Association could, in fact, have so acted is a factual matter more properly considered in a motion for summary judgment. Therefore, the motion to dismiss on this basis will be denied.

However, the Association also moves to dismiss the cause of action under the First and Fourteenth Amendments and § 1983 because of the absence of state action. There is no allegation that the state was involved in or benefitted from the alleged misconduct, or that state officials conspired with the Contractors Association in any manner, or that the alleged misconduct was approved, supported or encouraged by the state. See, e. g. *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969) (allegation of conspiracy between private defendants and police); *Bradford v. Peoples Natural Gas Company, Inc.*, 60 F.R.D. 432 (W.D.Pa.1973). Nor is there an allegation of pervasive regulation, or even the limited regulation found insufficient in *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

Plaintiffs allege that there is state action present in this case, contending that the defendants entered into an affirmative action agreement with the Pennsylvania Apprenticeship and Training Council in 1972, and that the state has failed to enforce that agreement and the goals set forth therein despite findings of discrimination by both the Equal Employment Opportunity Commission (EEOC) and the Allentown Human Rights Commission (AHRC). Thus defendants are continuing to violate state law, and the state, plaintiffs contend, has by approving the affirmative action agreements also approved the discriminatory hiring practices. Finally, the defendants are signatory to a number of state contracts, and they include anti-discrimination clauses. Thus, these clauses have been violated, but the state has not acted to impose sanction for the violation of these clauses.

■ These arguments must fail. It is the clear import of the law that the plaintiff in a Civil Rights action "must specifically allege a direct causal link between some official conduct * * * and the alleged constitutional deprivations". *Fialkowski v. Shapp*, 405 F.Supp. 946 (3d Cir. 1973). All plaintiffs have done is indicate that the Commonwealth has failed to prevent wrongful conduct. This argument, if accepted, could lead to the conclusion that every crime, such as burglary or murder, results from the failure of a law enforcement officer cloaked with state authority to prevent a violation of a state law. Every victim of such a crime would thus logically be entitled to sue the Commonwealth for failure to prevent violation of its own law. To avoid such an intolerable situation, the *Fialkowski* requirement must be met; and in this case, that requirement has not been met. Therefore, we shall grant the motion of the Contractors Association to dismiss the Complaint insofar as it alleges causes of action under § 1983 and the First and Fourteenth Amendments.

■ We shall also dismiss the claim under the Thirteenth Amendment. That Amendment was meant to abolish slavery or involuntary servitude, not denial of the opportunity to work. The case of *Afro-American Patrolmens League v. Duck*, 503 F.2d 294 (6th Cir. 1974) does not hold otherwise; rather, that case held that the equal protection clause of the Fourteenth Amendment and Civil Rights Acts provisions were violated by the police promotion system complained of therein.

■ *The Title VII Claims*: First of all, the Association contends that plaintiff Doster is precluded from seeking Title VII relief because nowhere is it alleged that he ever sought relief from the EEOC. It is well settled that exhaustion of remedies is a prerequisite to a cause of action to suit under Title VII. *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Plaintiffs do not dispute the contention that Doster never sought relief from the EEOC,

and accordingly we shall grant the Association's motion to dismiss Count II of the Complaint, being the action brought by Doster under Title VII. There being no motion for class action certification pending at this time, we need not now consider plaintiffs' observation that Doster will remain a class member because Peterson has filed with the EEOC and Doster is a member of the class that Peterson represents.

■■ The Association also moves to dismiss Peterson's Title VII claim because it contends that Peterson did not timely file with the EEOC. A charge filed with the EEOC must be timely in order to meet the jurisdictional requirements of Title VII actions. See *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 n.8 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Bates v. Western Electric*, 420 F.Supp. 521 (E.D.Pa.1976). Peterson was discharged, according to ¶¶ 16–26 of the Complaint, on March 16, 1972, but the charge he filed with the EEOC indicates that it was filed on September 7, 1973, more than 300 days later. Plaintiffs, however, contend that the Complaint not only complains of the act of discharge, but also of a continuing pattern of discriminatory conduct by the defendants against minorities, continuing after the date of discharge. Under the circumstances, the EEOC charge was timely filed. While accusations such as a refusal of the employer to rehire an employee do not indicate a continuing Title VII violation sufficient to render an EEOC charge timely filed for purposes of jurisdiction of a Title VII suit, see *Masco v. United Airlines*, 574 F.2d 1127 (3d Cir. 1978), we note that in this action Peterson is complaining not only of the discharge, but also of exclusion from a carpenter's apprentice program. Thus, even after discharge, Peterson suffered from the effects of the alleged wrongful conduct in that, by having been wrongly denied entry into the carpenter's apprentice program, Peterson was continually precluded from entry into the carpentry trade. Therefore, based upon the facts alleged in the Complaint, Peterson suffered from conduct in violation of Title VII after the date of discharge, and his charge with the EEOC was not untimely filed.

■ However, there is another defect in the charge filed with the EEOC: the Contractors Association was not named as a party. Many courts have dismissed Title VII actions against parties not named in the EEOC proceedings. See *Le Beau v. Libby-Owens-Ford Company*, 484 F.2d 798 (7th Cir. 1973) (action against an international union dismissed when EEOC charge named only local union and employer); *Harris v. Commonwealth of Pennsylvania*, 419 F.Supp. 10 (M.D.Pa.1976) (other named defendants dismissed when EEOC charges named only "Commonwealth of Pennsylvania Insurance Department"); *Jackson v. University of Pittsburgh*, 405 F.Supp. 607 (W.D.Pa.1975) (defendants not named in charge, including the Chancellor and members of the Executive Committee, were dismissed when charge filed with EEOC named University of Pittsburgh); *Arnold v. Consolidated Freight Ways, Inc.*, 399 F.Supp. 76 (S.D.Tex.1975) (International Union and Southern Conference of Teamsters dismissed when not named in EEOC charges); *Scott v. University of Delaware*, 385 F.Supp. 937 (D.Del.1974) (all defendants but the University dismissed where EEOC charges mentioned only the University). The law in these cases is clear. The conciliation process initiated by charges filed with the EEOC is favored by the law because it has the potential to solve problems without animosities of litigation; it gives the respondent the opportunity to explain and possibly justify his conduct before he is exposed to the publicity of litigation; conciliation is less expensive than litigation; and broad relief is available. However, these advantages are lost if a party does not have notice of the EEOC charges, and such notice is not likely to be furnished if the party is not named in the charges. Plaintiffs in this case attempt to argue that the Contractors Association had notice because of its dealings with the District Council, but the *Scott* and *Jackson* courts rejected similar arguments based on even closer relationships between the parties, because

there was no evidence or allegation that the unnamed persons had the opportunity to meet with EEOC representatives in any conciliatory conferences. We face a similar situation, and we conclude that dismissal of the Title VII claim against the Contractors Association is proper.

In so holding, we are not subjecting Peterson to a mere technicality to which a civil rights plaintiff should not be exposed and with which other courts have been concerned. See *Local 179, United Textile Workers v. Federal Paper Stock Co.*, 461 F.2d 849 (8th Cir. 1972) (the fact that the charge was filed by the Union and not the complaining female employees deemed insignificant); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970) (Court rejected defendant's contention that plaintiff who raised only sex discrimination in EEOC charge could not include in her complaint national origin discrimination allegations). Instead we are dealing with a basic element of the administrative remedy requirement: the furnishing of notice to an alleged Title VII offender and the providing of an opportunity to conciliate. Consequently, we find that the failure of Peterson to name the Contractors Association in the charges filed with the EEOC precludes this action against the Contractors Association, and we shall grant its motion to dismiss the cause of action alleged under Title VII.

*The § 301 Claim*: The Contractors Association contends that the Complaint fails to state a cause of action under § 301 because that section exists to remedy violations of union-management contracts, and in this case there is no allegation of a union-management contract involving the Contractors Association. For this same reason, this defendant contends that there is no jurisdiction under § 301.

■ However, plaintiffs are alleging that the Contractors Association, together with the Union and the District Council, determines the policies and practices of the Lehigh Valley Carpenter Apprentice Program, and that this is the basis of the Contractors Association's contractual duty to serve all employees in a non-discriminatory manner. Whether the Contractors Association does in fact possess any contractual authority to help dictate the policies of the Apprentice Program is at this juncture a factual issue not ripe for disposition on a motion to dismiss. Accordingly, the motion of the Contractors Association to dismiss the § 301 claim will be denied.

■ *The claims for punitive damages*: The Contractors Association is also moving to strike the claims for punitive damages under Title VII and § 1981. We believe that the law of this Circuit is that punitive damages are unavailable under Title VII actions. See *Richerson v. Jones*, 551 F.2d 918 (3d Cir. 1977). However, we do believe that such damages are available under § 1981. We do not feel that such an award would create a conflict between Title VII and § 1981, as defendant suggests. Rather, if § 1981 punitive damages are permitted in this context, the result would be that punitive damages would not lie for an unlawful act of employment discrimination unless such employment discrimination was motivated by racial animus and bigotry proscribed by § 1981. If the Congress decides that this is not a proper result, then it is empowered to adjust statutory remedies as it deems proper. Such an adjustment is not properly the function of the courts. Therefore, we shall strike the claims for punitive damages under Title VII, but shall not strike the claim for punitive damages under § 1981.

## THE MOTION OF THE UNION DEFENDANTS

■ *The entire Complaint*: The Union and the District Council (collectively referred to as "the Union defendants") have filed a joint motion to dismiss. They assert that the entire complaint must be dismissed because of the failure to join G. & Q. Drywall. However, plaintiffs are contending that this action is brought because of the failure of the Union defendants to properly assist the plaintiff, and that the defendants together denied plaintiff entry into the Union and the Apprentice Program, and such a

denial forced G. & Q. Drywall to ultimately discharge plaintiffs. This may or may not be true, but we are not concerned with the factual accuracy of the Complaint, but its very nature. The Complaint does not indicate it was triggered by the discharge, but that the discharge and the instant litigation were both triggered by the same factors, those mentioned above. Therefore, we do not believe that a motion to dismiss for failure to join an indispensable party is appropriate and we shall deny said motion.

 *The § 301 Claim*: The Union defendants contend that the claim for punitive damages under § 301 should be struck. We note that while there is some authority for the proposition that punitive damages are available in § 301 cases, the law of this Circuit is set forth in *Local 127 United Shoe Workers of America v. Brooks Shoe Manufacturing Co.*, 298 F.2d 277 (3d Cir. 1962) (*en banc*), which held that such damages are not proper. See also *Neipert v. McKee et al.*, No. 76–1936 (Slip Opinion dated December 21, 1976), and the cases cited therein.

*The Civil Rights and Title VII Claims*: The Union defendants move to dismiss the § 1983 claim for lack of state action. For the reasons already stated in that portion of this Memorandum dealing with the corresponding Contractors Association motion we shall grant this motion. Likewise, the Union defendants move to dismiss Doster's Title VII claim because he failed to file with the EEOC and Peterson's claim because his filing was not timely. Again for reasons already discussed we shall grant the motion as to Doster and deny it as to Peterson. Of course, since the Union defendants were mentioned in the EEOC charges that ground for dismissal, available to the Contractors Association, is not available to the Union defendants.

### CONCLUSION

After considering all of the arguments and the applicable law we shall grant the following motions to dismiss or strike: the Contractors Association motions to dismiss Peterson's Title VII claim and both plaintiffs' claims under the First, Thirteenth and Fourteenth Amendments, and to strike punitive damages under § 301; and the motions of all defendants to dismiss the claims under § 1983, and Doster's Title VII claim. Because the reason for granting the striking of punitive damages under both § 301 and Title VII apply to all defendants even though each contention was asserted in only one motion, and because the dismissal of the claims under the First, Thirteenth and Fourteenth Amendments applies to all defendants even though it was only raised by the Contractors Association, we shall grant the motions to dismiss these claims as to all defendants. Therefore, after this disposition is put into effect, there will remain, as to Peterson, an action under § 1981 with the possibility of punitive damages against all defendants, a Title VII action against the Union defendants, and a § 301 claim against all defendants except the individual defendants (who, as mentioned, were not named in the Second Amended Complaint); and as to Doster, there will remain a § 1981 claim, with the possibility of recovering punitive damages, and a § 301 claim against all but the individual defendants.